**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| VIORICA MALANCEA,<br>Individually and on Behalf of All Others<br>Similarly Situated,<br><br>          Plaintiff,<br><br>          v.<br><br>FAMILY HOME CARE SERVICES OF<br>BROOKLYN AND QUEENS, INC.<br><br>          Defendant. | Case No.:<br><br>**CLASS AND COLLECTIVE ACTION<br>COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiff Viorica Malancea ("Plaintiff") by her attorneys Wittels Law, P.C., Hymowitz

Law Group PLLC, and Kheyfits P.C. brings this action individually and on behalf of a class of

persons defined below, against Defendant Family Home Care Services of Brooklyn and Queens,

Inc., ("Defendant," "FHC" or the "Company") and alleges the following with knowledge as to

her own acts, and upon information and belief as to all other acts:

### SUMMARY OF THIS CLASS AND COLLECTIVE ACTION
### TO RECOVER FOR DEFENDANT'S WAGE AND HOUR VIOLATIONS

1.  This suit seeks to remedy FHC's illegal pay practices. Defendant is a home

health care agency whose workers provide home-based aid to individuals in need of medical or

other home care assistance. Plaintiff and the Class are hard-working home health and personal

care aides (collectively, "home care workers") employed by FHC.

2.  FHC is a sizeable home health company, servicing hundreds of individuals in the

New York City metropolitan area. FHC's success is attributable to the devoted service of its

home care workers. Nevertheless, although Plaintiff Ms. Malancea and the Class work more

than 40 hours per week to service FHC's clients, Defendant fails to pay its home care workers the proper overtime and wage parity compensation they are legally and justly owed.

3.      While Defendant's labor practices undoubtedly benefit its bottom line, they are in stark violation of New York State Labor Law ("NYLL" or "N.Y. Labor Law"), the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and their supporting regulations.

4.      Home care workers perform vitally important work that is physically and psychologically demanding.  These workers are crucial for ensuring access to the care that many individuals need to remain healthy and independent, and they should be compensated fairly and, at the very least, in accordance with the law.

5.      The home care industry has grown dramatically over the past thirty years as more individuals choose to stay at home rather than seek care in nursing homes.  Today, there are approximately 2 million home care workers nationwide supporting their patients' independence. Yet despite the industry's growth, home care workers remain among the lowest paid service industry workers.  The average wage for a home care worker in the United States—comprised overwhelmingly of immigrant women and women of color—is less than $20,000 a year. Further, the lack of basic employment protections, including compliance with state and federal wage and hour laws, results in an approximately 50% turnover rate in the home care industry and leaves those who do stay in the industry unable to take care of their own families.

6.      Plaintiff Ms. Malancea brings this action on behalf of herself and all similarly situated employees, both as a class action under Rule 23 of the Federal Rules of Civil Procedure, and as a collective action under the FLSA, 29 U.S.C. § 216(b).

7.      Only by joining together in a class and collective action can the Company's employees remedy FHC's ongoing wrongdoing.  Because the monetary damages suffered by

each employee are small compared to the much higher cost a single employee would incur in trying to challenge FHC's unlawful pay practices, it makes no financial sense for an individual employee to bring her own lawsuit. Further, many, if not most, of Defendant's employees do not realize they are victims of wage and hour violations.

8. With this class action, Plaintiff and the Class seek to level the playing field and ensure that companies like FHC engage in fair and upright business practices. Plaintiff therefore seeks equitable relief in addition to monetary damages. Plaintiff also asks that the Court declare Defendant's wage and hour practices impermissible, enjoin Defendant from continuing its abusive labor practices, require that Defendant return all misappropriated monies, and compensate Plaintiff and the Class for all harms they have suffered because of Defendant's unlawful conduct.

## PARTIES

9. Plaintiff Viorica Malancea is a New York citizen, and at all times relevant to this action resided in Brooklyn, NY. Plaintiff Malancea was employed by FHC from around August 2014 until around October 2016. Plaintiff Malancea's Consent to Join this Collective Action is attached hereto as Exhibit A.

10. At all relevant times, Plaintiff Malancea worked as a home care worker in Brooklyn, occasionally working more than 40 hours per week.

11. Defendant FHC is a New York corporation with its headquarters located at 168 7th Street, Brooklyn, New York 11215. FHC is primarily in the business of placing home health and personal care aides at the homes of patients in New York City with medical and personal care needs.

12. On information and belief, Defendant FHC is organized as and claims to be a non-for-profit corporation. On information and belief, FHC has employed home care workers to

3

work 24-hour long shifts.  On information and belief, FHC failed to pay at least the minimum wage to these workers for these shifts.

**JURISDICTION AND VENUE**

13.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337 and 29 U.S.C. § 216(b) because Plaintiff seeks relief under federal law, specifically the FLSA, 29 U.S.C. § 201 *et seq*.

14.     This Court has jurisdiction over Plaintiff's NYLL claims pursuant to 28 U.S.C. § 1332 (the "Class Action Fairness Act").  This action meets the prerequisites of the Class Action Fairness Act, because the aggregate claims of the Class exceed the sum or value of $5,000,000, the Class has more than 100 members, and diversity of citizenship exists between at least one member of the Class and Defendant.

15.     This Court also possesses supplemental jurisdiction over Plaintiff's NYLL claims pursuant to 28 U.S.C. § 1367 because those claims arise out of the same case or controversy.

16.     This Court has personal jurisdiction over Defendant because it is a New York corporation headquartered in New York.

17.     Venue is proper in this district under 28 USC § 1391 because Defendant resides in the Eastern District of New York and because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

**FACTUAL ALLEGATIONS**

18.     Upon information and belief, FHC was established in 1980.  On information and belief, the Company's revenues have been well in excess of $500,000 in each year from 2011 to the present.

19.     FHC's employees' work also regularly involves them in interstate commerce.  Yet FHC has committed multiple wage and hour violations, which are detailed in the following

paragraphs.

A. **Failure to Pay Overtime at the Proper Rate**

20. In 2014, Plaintiff Malancea's regular rate of pay was $10.00 per hour, $11.41 per hour, and $12.52 per hour.

21. In 2015, Plaintiff Malancea's regular rate of pay was $10.00 and $10.50 for mutual cases, where she served two patients at the same location.

22. In 2016, Plaintiff Malancea's regular rate of pay was $10.00, $10.50, $11.10, and $11.60.

23. During her tenure with FHC, Plaintiff Malancea worked hours exceeding 40 hours per week. Ms. Malancea's payroll account records confirm the hours she devoted to Defendant's clients.

24. Under the applicable NYLL regulations, 12 NYCRR § 142-2.2, prior to January 1, 2015, to the extent the FLSA overtime exemption applied to Ms. Malancea, FHC was required to pay her and all other members of the Class at least one and a half times the basic minimum hourly rate for each hour worked in excess of 40 hours per week. For the period of March 1, 2014 through January 1, 2015 (when the applicable federal regulations became effective), the overtime rate required by New York Law was $15.00 (1.5 x $10.00, the minimum rate under Wage Parity Law).

25. Defendant violated the applicable NYLL regulations because from March 1, 2014 to January 1, 2015 Defendant FHC paid Plaintiff Malancea for overtime worked at her regular rate.

26. Under the applicable FLSA regulations, 29 CFR Part 552, starting on January 1, 2015, FHC was required to pay Ms. Malancea and all other members of the Collective at one and a half times their regular hourly rate ($15.00 per hour), for each overtime hour worked in excess

5

of 40 hours worked during a week.

27. Defendant also violated the applicable FLSA regulations. For example, during the week of August 8, 2015 to August 14, 2015, Ms. Malancea's pay statement demonstrates that she worked 48 hours, yet was underpaid for the 8 overtime hours, receiving from Defendant only $10.00 or $10.50 per hour instead of $15.00 mandated by state and federal law.

28. From January 1, 2015 until the end of Ms. Malancea's employment in or around October 2016, FHC failed to pay an overtime premium of one and a half times the regular hourly rate.

29. FHC also failed to pay members of the Class the required New York and/or FLSA overtime premium due to a uniform company policy of misclassifying certain hours worked as straight time only.

30. The overtime violations detailed above are evident from the payroll account records in both Ms. Malancea's and Defendant FHC's possession.

31. Defendant's failure to pay Plaintiff the proper overtime compensation required by the FLSA and NYLL was willful because it knew about or showed reckless disregard for its failure to compensate its employees at an overtime rate required by these statutes. Defendant's unlawful conduct occurred pursuant to a company policy and/or practice of minimizing labor costs by denying Plaintiff and the Class compensation in violation of the FLSA and NYLL.

**B. Denial of "Spread of Hours" Pay for Time Worked in Excess of 10 Hours**

32. Plaintiff Malancea's regular hourly wage was $10 per hour, the minimum required under the New York Wage Parity Law, N.Y. Pub. Health Law § 3614-c at least since 2014.

33. Pursuant to 12 NYCRR § 142-2.4 Defendant is required by New York law to pay Plaintiff and the Class an extra hour's pay for split shifts or any time worked in excess of the 10-

hour shift.  This required extra pay is called "spread of hours" pay.

34.    Plaintiff Malancea and the Class regularly worked more than ten hours per day. For example, during the week from August 8, 2015 to August 14, 2015 Plaintiff Malancea worked at least four shifts that were longer than 10 hours but was not paid spread of hours pay.

35.    Defendant failed and continues to fail to provide spread of hours pay to its employees when they work more than ten hours per day.

36.    The spread of hours violations detailed above are evident from both the payroll account records in Ms. Malancea's and Defendant FHC's possession.

**C.    <u>Wage Theft Prevention Act Violations</u>**

37.    Defendant failed to provide Plaintiff and the Class with accurate wage statements, which is required by NYLL § 195(3).  For example, Ms. Malancea's wage statements did not reflect the correct overtime rate or rates of pay, and the number of regular and overtime hours worked.  Ms. Malancea's wage statements regularly did not itemize the actual hours worked during a pay period, only to be reflected on a later wage statement.  Moreover, Ms. Malancea's wage statements, except on two occasions when paid time off was actually paid (pay stubs dated 10/2/2015 and 12/30/2016), did not reflect any compensation required by New York's Wage Parity Law.

38.    Defendant also failed to furnish Plaintiff and the Class with an accurate annual wage notice as required by NYLL § 195(1).

**D.    <u>Failure to Pay Wages Promptly</u>**

39.    Plaintiff Malancea and the Class are manual workers within the meaning of NYLL § 191(1)(a)(i).  They spend well in excess of 25% of their working time performing physical labor.

40.    NYLL § 191(1)(a)(i) requires that Plaintiff and the Class be paid weekly and that

7

wages be paid with no more than a 7-day lag—i.e. not later than seven calendar days after the end of the week in which the wages are earned.

41.    The FLSA requires that wages be promptly paid and that they not be unreasonably delayed.

42.    Defendant failed to pay earned compensation to Plaintiff and the Class with the frequency and timeliness required by NYLL § 191(1)(a)(i).

43.    Defendant delayed payment to Plaintiff and the Collective for longer than is reasonable under the FLSA.

44.    Through Plaintiff Malancea's employment with FHC, the Company's uniform payroll practice was to pay its employees like Plaintiff Malancea every other Friday.  On each payday, Plaintiff was provided with a single paycheck that covered a two-week pay period, but FHC lagged the checks by 7 days, which meant that payment for the first week of the two-week period of work was delayed by 14 days.

45.    In addition, on multiple occasions, FHC delayed payment for certain days by weeks or even months.  For example, FHC paid Ms. Malancea for the work she performed on June 3, 2016 on September 16, 2016.

46.    Many of FHC's competitors do not withhold their workers' wages for such lengthy periods and generally pay on a weekly basis.

47.    Defendant's failure to promptly pay Plaintiff and the Class was willful, unreasonable, and upon information and belief was motivated by illegitimate business purposes, including FHC's desire to hold on to its employee's wages for a longer period of time instead of paying with reasonable promptness.

**E.**    **Failure to Pay Total Compensation Under Wage Parity Law**

48.    As part of its effort to improve the quality of care for New Yorkers who receive

home health care services, in 2011, the New York Legislature enacted Public Health Law §

3614-c, which went into effect as of March 1, 2012. Commonly known as the Wage Parity Law,

the statute conditions Medicaid reimbursement for home health care services provided in New

York City and the surrounding counties of Westchester, Suffolk, and Nassau upon a home health

care agency's certification that its home care workers are paid a statutorily defined minimum

wage. That wage is determined by reference to New York City's Living Wage Law (*see*

Administrative Code of City of NY § 6-109[b][1][a], [b][3]), which sets a minimum wage and

health benefits supplement rate that must be paid by any City service contractor or subcontractor

to its employees who provide home care services. By referring to the New York City Living

Wage Law, the Wage Parity Law aims to bring total compensation for Medicaid-reimbursed

home care aides in the metropolitan New York area into line with compensation paid to aides

who are under contract with New York City, thereby furthering the legislative purpose of

stabilizing the home care workforce, reducing turnover, and enhancing recruitment and retention

of home care workers.

49.     The Wage Parity Law applies to entities like FHC that contract with managed

care plans for Medicaid reimbursements. NYPHL § 3614-c(6). The Wage Parity Law applies

"equally to services provided by home care aides who work on episodes of care as direct

employees of certified home health agencies, long term home health care programs, or managed

care plans, or as employees of licensed home care services agencies, limited licensed home care

services agencies, or under any other arrangement." NYPHL § 3614-c(4).

50.     FHC has been and continues to be a licensed home care services agency.

51.     FHC has entered into agreements with one or more managed care plans. Under

the terms of these agreements, managed care plans reimburse FHC for the services performed by

its employees with New York state Medicaid funds. On information and belief, under the terms of these agreements, FHC was obligated to compensate its home care aides according to the Wage Parity Law.

52. On information and belief, FHC received reimbursements from managed care plans. These reimbursements were funded, at least in part, by New York state Medicaid funds.

53. Plaintiff Malancea was a home care aide as defined by the Wage Parity Law.

54. On information and belief, FHC received reimbursements funded by New York state Medicaid funds for Plaintiff Malancea's services from a managed care plan.

55. The New York State Department of Health periodically publishes official notices of home care worker wage parity minimum rate of total compensation, which provide the breakdown of total hourly compensation of homecare workers.

56. For the period of March 1, 2012 through February 28, 2013, the minimum rate of home care workers' total compensation was $9.00 per hour plus $1.35 per hour if medical benefits were not provided by employer.

57. For the period of March 1, 2013 through February 28, 2014, the minimum rate of home care workers' total compensation was $9.50 per hour plus $1.43 in wages and/or wages and benefits.

58. For the period of March 1, 2014 through October 2016 (the end of Ms. Malancea's employment with FHC), the minimum rate home care workers' total compensation was $14.09, consisting of a Base Wage of at least $10.00 per hour, Additional Wages of up to $1.69 per hour, and Supplemental (benefit) Wages of up to $2.40 per hour.

59. FHC failed to pay Plaintiff Malancea the minimum rate of total compensation required by the Wage Parity Law. Ms. Malancea pay stubs show that in 2015 and 2016, except

one occasion in each respective year when Defendant FHC only partially and with a great delay compensated Plaintiff for what appears to be unpaid Wage Parity portion of her compensation ($54 PTO in 2015 and $618.50 PTO in 2016), she was paid only straight time wages of $10.00, $10.50, $11.10, and $11.60 per hour. Accordingly, FHC failed to pay Plaintiff Malancea and other members of the Class the total minimum compensation required under the Wage Parity Law in full.

<u>**COLLECTIVE ACTION ALLEGATIONS**</u>

60. Plaintiff brings Counts I-II under the FLSA on behalf of herself and all other similarly situated current and former home health and personal care aides (collectively "home care workers") employed by Defendant at any time within the three years prior to the date of the filing of this action and thereafter (the "FLSA Collective").

61. At all relevant times, Plaintiff and the FLSA Collective are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendant's decision, policy, plan, and common programs, practices, procedures, protocols, routines, and rules of willfully failing and refusing to pay Plaintiff one and a half times her regular rates for work in excess of 40 hours per workweek and failing to pay Plaintiff her wages promptly.

62. Defendant's unlawful conduct, as described in this Class and Collective Action Complaint, is pursuant to a corporate policy or practice of minimizing labor costs.

63. Defendant is aware or should have been aware that as of January 1, 2015 federal law requires it to pay home care workers an overtime premium for hours worked in excess of 40 per workweek.

64. Defendant is aware or should have been aware that the FLSA requires prompt payment of wages.

65. Counts I-II are properly brought under and maintained as an opt-in collective action pursuant to 29 U.S.C. § 216(b).

66. The members of the FLSA Collective are readily ascertainable, can be located through Defendant's records, and would benefit from the issuance of a court supervised notice of this lawsuit and the opportunity to join the lawsuit.

67. Notice should be sent to the members of the FLSA Collective pursuant to 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

68. Plaintiff brings Counts III–IX pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of herself and a Class of FHC employees preliminarily defined as follows:

> All persons who were employed by FHC as home care workers who, at any time within six years prior to the date of the filing of this action and thereafter, did not receive full compensation for all overtime and straight hours worked.

69. Excluded from the Class are Defendant, Defendant's legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in FHC; and the Judge(s) to whom this case is assigned, their judicial staffs, and any member of the Judges' immediate family.

70. The claims of Plaintiff and the Class may properly be maintained as a class action against Defendant pursuant to the provisions of Federal Rule of Civil Procedure 23.

71. The size of the Class is more than 100 individuals. The persons in the Class are so numerous that the joinder of all such persons is impracticable.

72. Plaintiff is a member of the Class. Her claims are typical of the claims of the Class and do not conflict with the interests of any other members of the Class. All members of the Class have been subject to and affected by the same or similar conduct.

12

73.     Plaintiff will fairly and adequately protect the interests of all Class members because it is in her best interest to vigorously prosecute the claims alleged herein and to obtain full compensation due to her for the illegal conduct of which she complains.  Plaintiff has retained competent and experienced class action attorneys to represent her interests and those of the Class.

74.     Questions of law and fact are common to the Class and predominate over any questions affecting only individual members, and a class action will generate common answers to the questions below, which are apt to drive the resolution of this action:

a.  Whether Defendant failed to pay its employees all overtime compensation earned in violation of N.Y. Labor Law §§ 650 *et seq*. and 12 NYCRR § 142-2.2;

b.  Whether Defendant failed to pay its employees all compensation for straight time earned in violation of N.Y. Labor Law §§ 198 *et seq*.;

c.  Whether Defendant should compensate its employees for an extra hour of pay for all days when they worked more than 10 hours or worked split shifts as required by New York's spread-of-hours law;

d.  Whether Defendant failed to furnish the Class with accurate wage statements, as required by NYLL § 195(3);

e.  Whether Defendant failed to furnish the Class with an accurate annual wage notice, as required by NYLL § 195(1);

f.  Whether Defendant failed to pay its employees all Wage Parity Act minimum wages in violation of Public Health Law § 3614-c, and NYLL §§ 198, 663(1);

g.  Whether, and to what extent, equitable relief should be imposed on Defendant to prevent the Company from continuing its unlawful labor policies; and

h.  The extent of class-wide injury and the measure of damages for those injuries.

75.     A class action is superior to all other available methods for resolving this controversy because i) the prosecution of separate actions by Class members will create a risk of adjudications with respect to individual Class members that will, as a practical matter, be dispositive of the interests of the other Class members not parties to this action, or substantially

impair or impede their ability to protect their interests; ii) the prosecution of separate actions by Class members will create a risk of inconsistent or varying adjudications with respect to individual Class members, which will establish incompatible standards for Defendant's conduct; iii) Defendant has acted or refused to act on grounds generally applicable to all Class members; and iv) questions of law and fact common to the Class predominate over any questions affecting only individual Class members.

76.     Accordingly, this action satisfies the requirements set forth under Fed. R. Civ. P. 23(a) and 23(b).

### <u>COUNT I</u>
### (FLSA – Unpaid Overtime Wages)

77.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

78.     At all relevant times, Plaintiff and the FLSA Collective were employed by an enterprise engaged in commerce within the meaning of 29 U.S.C. §§ 203(e), (r), and (s).

79.     At all relevant times, Plaintiff and the FLSA Collective were employees of Defendant within the meaning of 29 U.S.C. § 203(e).

80.     The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations, 29 CFR Part 552 effective as of January 1, 2015, apply to Defendant FHC and protect Plaintiff and the FLSA Collective.

81.     FLSA 29 U.S.C. §§ 206 and 207 mandate that in calculating overtime the employer must utilize the employees' regular rate of pay.

82.     In violation of the FLSA and supporting regulations, FHC has engaged in a widespread pattern, policy, and practice of failing to pay Plaintiff and the FLSA Collective overtime wages at time-and-a-half their regular rate of pay for all hours that they worked over 40

hours in a workweek.

83.     As a result of Defendant's unlawful acts, Plaintiff and the FLSA Collective have been deprived of overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts as well as liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to the FLSA.

**COUNT II**
**(FLSA – Failure to Pay Wages Promptly)**

84.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

85.     The FLSA mandates that wages be promptly paid and that they not be unreasonably delayed.

86.     In violation of the FLSA, FHC has engaged in a widespread pattern, policy, and practice of failing to promptly pay Plaintiff and the FLSA Collective.

87.     Defendant's unlawful conduct has been willful and intentional.  Defendant was aware or should have been aware that its practices with respect to the compensation of Plaintiff and the FLSA Collective are unlawful.  Because Defendant willfully violated the FLSA, a three-year statute of limitations applies to such violations, pursuant to 29 U.S.C. § 255.

88.     Defendant has not made a good faith effort to comply with the FLSA's prompt payment requirement.

89.     As a result of Defendant's unlawful acts, Plaintiff and the FLSA Collective have been deprived of compensation in amounts to be determined at trial, and are entitled to recovery of such amounts as well as liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to the FLSA.

<b><u>COUNT III</u></b><br>
<b>(NYLL – Unpaid Overtime Wages)</b>

90. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

91. The overtime wage provisions of Article 19 of the N.Y. Labor Law and its supporting regulations apply to Defendant and protect Plaintiff and the Class.

92. In violation of N.Y. Labor Law applicable regulations FHC has engaged in a widespread pattern and practice of failing to pay its employees overtime compensation.

93. By Defendant's knowing or intentional failure to pay Plaintiff and the Class the correct overtime rate, Defendant has willfully violated N.Y. Labor Law Art. 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

94. Due to Defendant's willful violations, Plaintiff and the Class are entitled to recover from Defendant their unpaid overtime wages earned and due during the six years prior to the commencement of this action and thereafter, as well as liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest, pursuant to N.Y. Labor Law § 663.

<b><u>COUNT IV</u></b><br>
<b>(NYLL – Violations Related to Timeliness and Frequency of Pay)</b>

95. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

96. Plaintiff and the Class are manual workers within the meaning of NYLL § 191(1)(a)(i).

97. FHC willfully failed to pay Plaintiff and the Class earned compensation in a timely manner and with the required frequency in violation of NYLL § 191(1)(a)(i).

98. Due to Defendant's willful violations of the N.Y. Labor Law, Plaintiff and the

16

Class are entitled to recover from Defendant damages for late payments of wages in the amount of liquidated damages equal to one hundred percent of all late payments, as well as reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest, pursuant to N.Y. Labor Law § 198.

**COUNT V**
**(NYLL – Spread-Of-Hours Pay)**

99.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

100.     Under 12 NYCRR § 142-2.4, FHC is required to pay an hourly employee an extra hour of pay for any split-shift or day in which the employee's "spread of hours" exceeds 10 hours. The relevant spread is the time between the beginning and the end of employee's work day including all working time, time off for meals, and time off duty, as defined by 12 NYCRR § 142-2.18.

101.     Plaintiff and the Class often work a spread of hours in excess of 10 hours per day or split shifts.  However, Defendant never pays these employees an extra hour of pay for each day in which they worked over 10 hours or a split shift.  Defendant continually violates 12 NYCRR § 142-2.4.

102.     By Defendant's knowing or intentional failure to pay Plaintiff and the Class spread-of-hours pay, Defendant has willfully violated N.Y. Labor Law Art. 19, §§ 650 *et seq*., and the supporting New York State Department of Labor regulations.

103.     Due to Defendant's willful violations of the N.Y. Labor Law, Plaintiff and the Class are entitled to recover from Defendant their wages earned and due during the six years previous to commencing this action and thereafter, as well as liquidated damages, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

17

**COUNT VI**
**(NYLL – Failure to Provide Annual Wage Notices)**

104.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

105.    FHC willfully failed to provide Plaintiff and the Class with wage notices, as required by N.Y. Labor Law § 195(1).

106.    Through its knowing or intentional failure to provide Plaintiff and the Class with the wage notices required by the NYLL, Defendant has willfully violated NYLL, Article 6, §§ 190, *et seq.*, and the supporting New York State Department of Labor Regulations.

107.    Due to Defendant's willful violations of the N.Y. Labor Law, Plaintiff and the Class are entitled to statutory penalties of $50 for each workday that Defendant failed to provide them with wage notices, or up to a total of $5,000, plus reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL § 198(1-b).

**COUNT VII**
**(NYLL – Failure to Provide Accurate Wage Statements)**

108.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

109.    FHC willfully failed to provide Plaintiff and the Class with accurate statements of wages, as required by N.Y. Labor Law § 195(3) by, among others, omitting the work time spent traveling between clients on the same day.

110.    Through its knowing or intentional failure to provide Plaintiff and the Class with the accurate wage statements required by the NYLL, Defendant has willfully violated NYLL, Article 6, §§ 190, *et seq.*, and the supporting New York State Department of Labor Regulations.

111.    Due to Defendant's willful violations of NYLL, Article 6, § 195(3), Plaintiff and the Class are entitled to statutory penalties of $250 for each workweek that Defendant failed to

18

provide them with accurate wage statements, or a total of up to $5,000, plus reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by the NYLL, Article 6, § 198(1-d).

<b><u>COUNT VIII</u></b><br><b>(NYLL – Failure to Pay Eared Wages Mandated By The Wage Parity Law)</b>

112. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

113. New York Labor Law § 190(1) defines "Wages" as "earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis. The term "wages' also includes benefits or wage supplements as defined in section one hundred ninety-eight-c of this article, except for the purposes of sections one hundred ninety-one and one hundred ninety-two of this article."

114. New York Labor Law § 198-c(2) further provides; "As used in this section, the term "benefits or wage supplements" includes, but is not limited to, reimbursement for expenses; health, welfare and retirement benefits; and vacation, separation or holiday pay."

115. Pursuant to New York Labor Law § 198 employers such as the Defendant who fail to pay hourly employees wages in conformance with New York Labor Law shall be liable to the hourly employees for the wages that were not paid, and court costs and attorneys' fees incurred in recovering the unpaid wages.

116. The Total Compensation for home care workers as mandated by Wage Parity Law is wages under New York Labor Law.

117. During the period of Ms. Malancea's employment with FHC, Defendant was obligated to pay its home care worker employees the total compensation of $14.09 per hour (comprised of $10.00 per hour base wage, $1.69 per hour additional wage, and $2.40

19

supplemental wage) under the Wage Parity Law because it entered into agreements with managed care plans and was receiving reimbursements funded by the New York Medicaid program.

118. Plaintiff and the Class were entitled to receive the total compensation of $14.09 per hour under the Wage Parity Law, as set forth above.

119. Defendant never paid Plaintiff and the Class the Total Compensation as required by the Wage Parity Law.

120. Defendant's failure to pay Plaintiff and the Class the total compensation as required by the Wage Parity Law was without good faith basis to believe that such failure was in compliance with the law.

121. Due to Defendant's violations of the Wage Parity Law and N.Y. Labor Law, Plaintiff and the Class are entitled to recover from Defendant their wages earned and due during the six years previous to commencing this action and thereafter, as well as liquidated damages, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

<u>**COUNT IX**</u>
**(Unjust Enrichment – In The Alternative)**

122. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

123. If Plaintiff's and the Class New York Labor Law claim for wages required by the Wage Parity Law fails for any reason, Defendant was unjustly enriched by failing to pay Plaintiff and the Class the total compensation required by the Wage Parity Law.

124. Defendant was enriched by keeping the underpayment, which is the difference between what it should have paid under the Wage Parity Law and what it actually paid to the Plaintiff and the Class.

125. By keeping the underpayment, Defendant was enriched at Plaintiff's and the Class members' expense.

126. The circumstances of the enrichment are such that equity and good conscience require restitution to which Plaintiff and the Class are entitled.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Viorica Malancea on her own behalf and on behalf of all other similarly situated persons, seeks the following relief:

A. Designation of this action as a collective action on behalf of the FLSA Collective members and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA Collective, apprising them of the pendency of this action, and permitting them to assert timely FLSA and state law claims;

B. Designation of Plaintiff as the Representative of the FLSA Collective;

C. A declaratory judgment that the practices complained of herein are unlawful under the FLSA, 29 U.S.C. § 201, *et seq.*;

D. An award of damages, according to proof, including liquidated damages, to be paid by Defendant, as authorized by the FLSA;

E. Certification of this case as a class action pursuant to Rule 23;

F. Designation of Plaintiff as the Representative of the Class and counsel of record as Class Counsel;

G. Issuance of a declaratory judgment that the practices complained of in this Class and Collective Action Complaint are unlawful under the NYLL, Article 6, §§ 190, *et seq.*, NYLL, Article 19, § 650, et seq., and the supporting New York State Department of Labor Regulations;

H. An award of unpaid straight time pay, overtime pay, spread of hours pay, and liquidated

damages permitted by law pursuant to the NYLL and the supporting New York State Department of Labor Regulations;

I. Statutory penalties of $50 for each workday that Defendant failed to provide the Plaintiff and the Class with a wage notice, or a total of $5,000, as provided for by the NYLL, Article 6 § 198;

J. Statutory penalties of $250 for each workweek that Defendant failed to provide Plaintiff and the Class with accurate wage statements, or a total of $5,000, as provided for by the NYLL, Article 6 § 198;

K. Pre-judgment interest and post-judgment interest;

L. Issuance of an injunction requiring Defendant to pay all statutorily required wages pursuant to the N.Y. Labor Law and an order enjoining Defendant from continuing its unlawful policies and practices as described herein with respect to the Class and Collective;

M. Punitive damages;

N. Penalties, as provided by law;

O. Reasonable attorneys' fees and costs of the action; and

P. Such other relief as this Court shall deem just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Medvedeva requests trial by jury in this action of all issues so triable.

Dated:  Armonk, New York
June 4, 2018

By: _____

Steven L. Wittels (SW-8110)
J. Burkett McInturff (JM-4564)
Tiasha Palikovic (TP-5697)
WITTELS LAW, P.C.
18 HALF MILE ROAD
ARMONK, NEW YORK 10504
Telephone: (914) 319-9945
Facsimile: (914) 273-2563
slw@wittelslaw.com
jbm@wittelslaw.com
tpalikovic@wittelslaw.com
*Lead Counsel for Plaintiff and the Class*

Daniel Hymowitz (DH-0936)
HYMOWITZ LAW GROUP, PLLC
1629 Sheepshead Bay Road
Brooklyn, NY 11235
Telephone: (718) 807-9900
Facsimile: (866) 521-6040
daniel@hymowitzlaw.com

Andrey Belenky (AB-1976)
Dmitry Kheyfits (DK-9799)
KHEYFITS P.C.
1140 Avenue of the Americas, 9th Floor
New York, NY 10036
Phone: (212) 203-5399
Facsimile: (212) 203-6445
abelenky@kheyfits.com
dkheyfits@kheyfits.com
*Co-Counsel for Plaintiff and the Class*

23